UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 16-10661 |
| WHISTLER ENERGY II, LLC | SECTION "B" |
| DEBTOR | CHAPTER 11 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| H. KENNETH LEFOLDT | |
| VERSUS | ADV.P. NO. 18-1047 |
| TETRA APPLIED TECHNOLOGIES, LLC | |

## MEMORANDUM OPINION

This matter came before the court on October 18, 2018 as a trial on the complaint of H. Kenneth Lefoldt, Trustee of the Whistler Energy II, LLC Litigation Trust, ("Trustee") against Tetra Applied Technologies, LLC ("Tetra") seeking to recover transfers in the amount of $595,603.98 that were made in the 90 days before the filing of the bankruptcy petition under 11 U.S.C. § 547. Because the court finds that Tetra did not carry its burden of proving any defenses to § 547, judgment will be entered in favor of the Trustee.

**I.      Background Facts**

The parties stipulated to most of the underlying facts in their joint pre-trial order. A transfer in the amount of $388,006.86 was made on January 28, 2016 from the debtor to Tetra. A second transfer in the amount of $207,597.12 was made on February 8, 2016. The debtor was insolvent at the time of the transfers. The transfers were on account of an

Case 18-01047 Doc 23 Filed 11/02/18 Entered 11/02/18 11:36:18 Main Document Page 2 of 6

antecedent debt. The involuntary bankruptcy petition was filed on March 24, 2016, which is less than 90 days from the date of the transfers. The transfers allowed Tetra to receive more than it would have received on account of such antecedent debt if the case were a case under Chapter 7 of the Bankruptcy Code, the transfer had not been made, and Tetra received payment of such antecedent debt pursuant to the provisions of the Bankruptcy Code.

These stipulations prove the Trustee's *prima facie* case, and thus, through the stipulations in the joint pre-trial order, the Trustee has met his burden of proof. Thus, the court need only analyze Tetra's defenses.

## II.   Legal Analysis

### A.   The ordinary course of business defense.

Section 547(c)(2) of the Bankruptcy Code states:

The trustee may not avoid under this section a transfer–

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was–

> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms.

The creditor bears the burden of proving by a preponderance of the evidence that the elements are satisfied. *In re Entringer Bakeries, Inc.* 548 F.3d 344 (5th Cir, 2008).

In *Matter of Gulf City Seafoods, Inc.,* 296 F.3d 363 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals said that where the creditor raises an ordinary course

of business defense, the creditor had the burden to show:

> That as between it and the debtor, the debt was both incurred and paid in the ordinary course of their business dealings *and* that the transfer of the debtor's funds to the creditor was made in an arrangement that conforms with ordinary business terms - a determination that turns the focus away from the parties to the practices followed in the industry.[1]

The *Gulf City Seafoods* case was decided before the 2005 amendments to the Bankruptcy Code, which changed the "and" in § 547(c)(2) to an "or." Thus, Tetra need only prove that either § 547(c)(2)(A) or (B) applies.

### 1. Subjective prong of the test for ordinary course of business transactions.

In general, courts refer to the first element of the ordinary course defense, section 547(c)(2)(A) as the "subjective" element of the defense. This first element requires the court to examine the history of the transactions between the debtor and the creditor to determine whether the payments made during the preference period comport with the nature of the payments made before the preference period. The factors most commonly relied upon by courts in making this determination are: 1) the length of time the parties were engaged in the transactions at issue; 2) whether the amount or form of tender differed from past practices; 3) whether the debtor or creditor engaged in any unusual collection or payment activities; and 4) the circumstances under which payment was made.[2]

---

[1] *Gulf City Seafoods,* 296 F.3d at 367.

[2] 5 Collier on Bankruptcy (15th ed. Rev.) at ¶ 547.04[2][a].

At trial, the parties focused on the length of time between when an invoice was sent by Tetra, and when it was paid by the debtor to show the ordinary course of business between the parties. Evidence introduced at trial showed that invoices issued by Tetra in the period between April 30, 2014 and July 28, 2015, which was well before the filing of the bankruptcy petition, were paid anywhere from 29 to 60 days after the date of the invoice. The payments made during the preference period were made on invoices that were paid between 173 and 193 days later, which is a significantly longer time period than the payments made before the preference period.[3] The only witness to testify, Mr. Doug Dunlap, the credit manager for Tetra, confirmed that the debtor's payments during the preference period were late. Thus, as between the parties, the court finds that the payments made during the preference period were not ordinary course payments because the time for payment during the preference period was significantly longer than the time for payments that were made before the preference period..

**2. The objective prong of the test for ordinary course of business transactions.**

The second element of the ordinary course of business test is often called the "objective" part of the test. The Fifth Circuit discussed § 547(c)(2)(C) in *Matter of SGSM Acquisition Company, LLC,* 439 F.3d 233 (5th Cir. 2006) stating:

> [I]n examining industry practice under [§ 547(c)(2)(B)], the relevant inquiry is "objective"; that is to say, we compare the credit arrangements between

---

[3] Trial Exhibits 1-4.

4

other similarly situated debtors and creditors in the industry. Some latitude exists under the objective prong, as the courts should not impose a single norm for credit transactions within an industry; the inquiry is whether a particular arrangement is so out of line with what others do that it cannot be said to have been made within the ordinary course. As to what constitutes the relevant industry, *Gulf City* held that the term ordinarily encompasses suppliers to whom the debtor might reasonably turn for similar supplies and firms with whom the debtor competes for customers.[4]

Similarly, *Gulf CitySeafoods* holds:

Defining the industry whose standard should be used for comparison is not always a simple task. In our view, for an industry standard to be useful as a rough benchmark, the creditor should provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product.[5]

At trial, the only evidence that Tetra introduced about the industry standard was the testimony of Mr. Dunlap, Tetra's credit manager. Dunlap testified that before he worked for Tetra, he worked at another company called Archer that was in the same industry, and that approximately 15% of the accounts Archer had were more than 120 days overdue. He also testified that when he began working at Tetra in June 2016, 21% of Tetra's accounts were more than 120 days past due.

Perhaps Dunlap's testimony establishes that in the industry, it is considered normal for 15-20% of accounts to be past due, although the court doubts that looking at only two companies in a fairly large industry is sufficient to establish an industry practice. But that is not really the question before the court. The question is whether it is an industry norm

---

[4] *SGSM*, 439 F.3d at 239.

[5] *Gulf City Seafoods,* 296 F.3d at 369.

for the debtor to be making payments 173 to 193 days after receiving invoices. The court finds that it is not. If 15 to 20% of clients are making late payments, then that means that 80 to 85% are making their payments in a timely fashion. The court finds that industry practice is not shown by evidence of what only a small minority of companies are doing.

Because Tetra did not put on any other evidence to support its ordinary course defense under the objective prong, the court finds that it did not prove its defense under the objective prong.

### III. Conclusion

The Trustee has that shown all of the elements of § 547 apply, and Tetra has not shown any defense. Accordingly, the court finds that the Trustee is entitled to a return of the $$595,603.98 in payments that were made during the preference period. The Trustee's complaint also asks that he be awarded both pre and post judgment interest, and Tetra has not made a showing why this should not be granted, accordingly, the court also awards interest at the federal judicial rate from the date of the filing of the suit until the judgment is paid in full.

New Orleans, Louisiana, November 2, 2018.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge